STANDARD ELECTRICA, S. A.,
Plaintiff-Appellant,

v.

HAMBURG SUDAMERIKANISCHE
DAMPFSCHIFFFAHRTS–GESELL-
SCHAFT, Defendant-Appellee,

and

Columbus Lines, Inc., Defendant.

No. 252, Docket 30855.

United States Court of Appeals
Second Circuit.

Argued Dec. 8, 1966.

Decided April 19, 1967.

Feinberg, Circuit Judge, dissented.

**944**

Seymour Simon, New York City (Richard T. Graham, New York City, on the brief), for plaintiff-appellant.

Wharton Poor, New York City (R. Glenn Bauer, Peter J. Zambito and Haight Gardner Poor & Havens, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and HAYS and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

Libellant Standard Electrica, S.A., appeals from a judgment entered by Judge McLean in the Southern District of New York, on August 25, 1966, denying libellant's motion for summary judgment made pursuant to Rule 58 of the Admiralty Rules of the United States Supreme Court, and dismissing its complaint seeking $13,300 from the defendant-appellee, Hamburg Suda-merikanische Dampfschifffahrts-Gesellschaft, as additional damages for the loss of 1,680 television tuners shipped from New York to Rio de Janeiro.[1] The entire shipment consisted of nine "pallets," each containing six cardboard cartons of 40 tuners. Seven of the nine pallets were never delivered, and appellee has conceded its liability; the only question is the amount of that liability.

The parties agree that the provisions of the Carriage of Goods by Sea Act of 1936 (hereinafter COGSA) are applicable, and limit recovery to "$500 per package." Section 4(5), 46 U.S.C. § 1304(5).[2] The sole issue on appeal, as below, is the meaning of the word "package" for purposes of that limitation. It is libellant's contention that each cardboard carton qualifies as a package, and that the "palletized" form in which those cartons were received for shipment ought to be regarded as nothing more than a mechanical aid for delivery. Judge McLean held, however, that each pallet constituted a package within the meaning of § 4(5) of the Act. As the defendant had previously paid libellant $3,500, $500 for each of the seven missing pallets, together with interest, libellant's motion was denied and the libel was dismissed. We agree with Judge McLean's ruling and affirm the judgment below.

The parties stipulated that all of the pallets were made up by the shipper, I. T. T. Export Corporation, in the following manner:

As a base there was a wooden platform measuring 39″ in length and 33″ in width constructed of two floors about 4″ apart nailed to three 2″ x 4″ stringers. On this platform were placed six corrugated fibreboard cartons, each containing 40 T.V. Tuners. The cartons were stacked in three tiers of two cartons each. Each tier completely covered the platform. The dimensions of each of the cartons were: 33½ inches long, 19 inches wide and 12½ inches high. Each carton weighed 60 pounds with 40 TV Tuners packed inside. Over the top tier of these cartons was fitted a wooden deck approximately ½ inch thick, the same width and length as the platform upon which the cartons were placed. The purpose of the top wooden deck was to prevent other cargo and the straps from cutting into the top two cartons. Four metal straps ½ inch wide were fitted over the top of the wooden deck, down the sides of the cartons and underneath

1. The libel and complaint against defendant Columbus Lines, Inc., was dismissed on the consent of all parties.

2. 46 U.S.C. § 1304(5): "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier."

the platform where their overlapping ends were fastened tightly together with metal seals. Two of these straps ran lengthwise and two ran crosswise. When bound together with the metal straps the dimensions of each pallet were 39″ in length, 33″ in width and 42″ in height. The gross weight of each pallet was 380 lbs.

When COGSA was enacted in 1936, it had as its central purpose the avoidance of adhesion contracts, providing protection for the shipper against the inequality in bargaining power. See Gilmore & Black, Admiralty 125–126 (1957); Caterpillar Overseas, S.A. v. S.S. Expeditor, 318 F.2d 720, 722 (2 Cir. 1963); Jones v. The Flying Clipper, 116 F.Supp. 386, 388–389 (S.D.N.Y. 1953). Section 4(5) provided that the carrier may not reduce its maximum liability below $500 per package or unit. See also 46 U.S.C. § 1303(8). At the same time, § 4(5) cast upon the shipper the burden of declaring the nature and value of the goods, and paying a higher tariff, if necessary, if he wished to impose a higher liability upon the carrier. See Caterpillar Americas Co. v. S.S. Sea Roads, 231 F.Supp. 647 (S.D.Fla. 1964), aff'd, 364 F.2d 829 (5 Cir. 1966); also Morrisey v. S.S. A. & J. Faith, 252 F.Supp. 54 (N.D.Ohio 1965).

In determining the meaning of "package," we are without the aid of meaningful legislative history. Only certain general observations may be made as to the reason why "package" was selected as an appropriate unit upon which the limitation of liability was placed in our 1936

Act, and in the English Act of 1924, which is similar. No doubt the drafters had in mind a unit that would be fairly uniform and predictable in size,[3] and one that would provide a common sense standard so that the parties could easily ascertain at the time of contract when additional coverage was needed, place the risk of additional loss upon one or the other, and thus avoid the pains of litigation.

Few, if any, in 1936 could have foreseen the change in the optimum size of shipping units that has arisen as the result of technological advances in the transportation industry. As both parties recognize, it is now common for carriers to receive cargo from their shippers in a palletized form or "containerized" form. In some instances an entire trailer may be uncoupled from its tractor-truck on the pier and placed aboard the carrier.[4] With the exception of Judge McLean's opinion below, 262 F. Supp. 343 (S.D.N.Y.1966), and possibly United Purveyors, Inc. v. Motor Vessel New Yorker, 250 F.Supp. 102 (S.D.Fla. 1965), no court has yet considered how the limitation of liability is to be construed in light of this technological change.

Libellant's principal contention is that a pallet is merely a mechanical device that is to be used in conjunction with a forklift and other machinery in order to facilitate loading. Certain benefits will accrue to the carrier through the use of pallets, namely, less damage to cargo and less labor cost over the long run, as the result of the decrease of individual

3. One old English case suggests the contrary, Whaite v. The Lancashire & Yorkshire Railway Co., L.R. 9 Ex. 67 (1874), where a large open top wagon was held to be a package: "It would be absurd to say that a waggon was too large to be a package; plainly, size cannot be a criterion." Cleasby, B. concurring. See also Reid v. Fargo, 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156 (1916) which was specifically referred to in the Hearings Before the Committee on Commerce, United States Senate, 74th Cong., 1st Sess., on a Bill relating to Carriage of Goods by Sea, May 10, 1935, pp. 38, 39.

4. Large container ships and trailer ships are being built in order to accommodate such special cargo. See, e. g., N. Y. Times, January 8, 1967, § 13 (advertisement). The acceptance of such shipping units gives rise to other exciting possibilities, such as the loading of vessels from "inland ports" by sky-crane helicopters. See, e. g., N. Y. Times, January 28, 1967, p. 29, cols. 6, 7 and 8. Economies, if realized, will only serve to foster the use of large shipping units.

handling required for items of a lesser size. Libellant does not argue that these are functions not normally performed by packaging in general, but suggests only that we should disregard the pallet and look to the cardboard boxes for the purposes of the limitation. In support of this contention, libellant argues that COGSA is a remedial statute and should be interpreted broadly to protect the rights of shippers; that statutory provisions setting forth a limitation of liability should be strictly construed so as to decide all questionable cases in favor of its non-applicability and that $500 a package provides a much more stringent limitation than it did 30 years ago. Since the change in optimum size of a shipping unit could not reasonably have been foreseen, he argues, we should rule that the outer casing was merely a mechanical device and not a package.

Libellant's contention overlooks a number of factors. First, it does not take into account the characterizations of the parties themselves. The dock receipt, the bill of lading, and libellant's claim letter all indicated that the parties regarded each pallet as a package. On the dock receipt the "Marks and Numbers" were given as "1/9 #" and the "No. of Pkgs." as "9 pallets." The invoice from the shipper to the libellant described the goods as follows:

"Numbers on the packages: 1/9

Quantity: 9

\* \* \*"

■ After the loss was discovered libellant sent a letter to appellee's agent complaining that "only 2 packages were discharged" out of "a shipment of 9 packages." Inasmuch as we are not faced with a case where the parties have attempted to define the word package by their agreement in a manner that might be repugnant to the Act, see, e.g., Pannell v. United States Lines Co., 263 F.2d 497, 498 (2 Cir.) (dictum), cert. denied, 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959), we think such characterizations are entitled to considerable weight in that the parties each had the same understanding as to what constitutes a "package" and those characterizations further reflect the meaning given that term by the custom and usage of the trade. Each pallet had the physical characteristics of a package and was clearly a "bundle put up for transportation." Black, Law Dictionary (4th ed. 1951).

■ Secondly, it was the shipper and not the carrier who chose to make up the cartons into a pallet, apparently for the reasons of greater convenience and safety in handling. The number of separate units received from the shipper is what is considered for the purposes of the bill of lading. As in this case, the number of inner cartons is not apt to be mentioned in any of the shipping documents prepared at the time of contract. Yet the parties, and courts necessarily, rely upon the shipping documents for information in the event of loss, see, e.g., India Supply Mission v. S.S. Overseas Joyce, 246 F.Supp. 536, 538 (S.D. N.Y.1965), and cases cited therein, and it would seem immaterial that the number of individual cartons within each pallet might have been visible to the workmen on the pier. Cf. Anticosti Shipping Co. v. Viateur St. Amand [1959] 1 Lloyd's Rep. 352 (Supreme Court of Canada).

Thirdly, it does not take into account the fact that § 4(5) specifically provides that the shipper, at his option, can obtain full coverage simply by declaring the nature and value of the goods in the bill of lading, and, if necessary, paying a higher tariff, and thereby avoid the "outdated" limitation.

■■ Lastly, since the word "package" fairly includes the pallets as made up for shipment in this case, we do not deem it important that the drafters might not have foreseen this precise application at the time that this provision was enacted thirty years ago, see, e.g., Cain v. Bowlby, 114 F.2d 519, 522–523 (10 Cir. 1940). If through the passage of time this statutory limitation has become inadequate and its application inequitable, a revision must come

from Congress, it should not come from the courts.

We are mindful that any other decision would only contribute to confusion as to the meaning of the word "package" as used in § 4(5), see, e.g., discussion of prior cases in Mitsubishi Int'l Corp. v. S.S. Palmetto State, 311 F.2d 382, 94 A.L.R.2d 1412 (2 Cir. 1962), cert. denied, 373 U.S. 922, 83 S.Ct. 1523, 10 L. Ed.2d 422 (1963); Gulf Italia Co. v. American Export Lines, Inc., 263 F.2d 135, 138 (2 Cir.) (dissenting opinion), cert. denied, 360 U.S. 902, 79 S.Ct. 1285, 3 L.Ed.2d 1254 (1959), and would place upon the carrier the burden of looking beyond the information in the bill of lading or beyond the outer packing to investigate the contents of each shipment. Only if "package" is given a more predictable meaning, will the parties concerned know when there is a need to place the risk of additional loss on one or the other accordingly or adequately to insure against it.

Affirmed.

FEINBERG, Circuit Judge (dissenting):

Appellant consignee never received 1,680 TV tuners worth $16,800, and appellee concedes it is liable for the loss. However, appellee limits its liability to $3,500. Therefore, appellant has been denied $13,300, which it has lost through no fault of its own. For insufficient reasons the majority opinion approves this inequitable result and disregards the strong policy behind section 4(5) of COGSA.

The purpose of section 4(5) when enacted in 1936 was to protect cargo interests like appellant. Prior to that time, seagoing carriers had been able to limit their liability for loss of cargo to insignificant amounts. See Jones v. The Flying Clipper, 116 F.Supp. 386, 388 & n. 10 (S.D.N.Y.1953). Raising the minimum liability limitation to $500 per package was a very substantial concession by carriers to cargo interests. See Pan-Am Trade & Credit Corp. v. The Campfire, 156 F.2d 603, 605–606 (2d

Cir.), cert. denied 329 U.S. 774, 67 S.Ct. 194, 91 L.Ed. 666 (1946). This the majority concedes. Therefore, one would think that in a close case section 4(5) would be construed consistently with that purpose—to protect the cargo interest. This is, of course, a close case; the majority opinion professes to find no controlling precedent or meaningful legislative history defining "package." I do not suggest that the definition or its application to particular facts are simple matters. Once again we have "the troublesome conundrum: When is a package not a package?" Mitsubishi International Corp. v. S.S. Palmetto State, 311 F.2d 382, 383 (2d Cir. 1962), cert. denied, 373 U.S. 922, 83 S.Ct. 1523, 10 L.Ed.2d 422 (1963). More precisely, here the question is which claimed package was *the* package under section 4 (5)—each sixty pound carton with forty TV tuners packed inside, or each "pallet" of six cartons strapped on a loading platform with a board on top, with open sides plainly exposing the cartons? Obviously, reasonable men can differ as to whether the "pallet" is literally a package; that being so, I suggest that the clear policy of the statute should be decisive unless there is controlling precedent to the contrary. I do not read the majority opinion as suggesting that there is.

In *Mitsubishi*, at 311 F.2d 384, this court emphasized in finding a "package" that the article there (steel) was "completely enclosed in a wooden box prepared for shipment." In Gulf Italia Co. v. American Export Lines, Inc., 263 F.2d 135, 137 (2d Cir.), cert. denied, 360 U.S. 902, 79 S.Ct. 1285, 3 L.Ed.2d 1254 (1959), this court made the same point in finding no package. ("Plainly the tractor was not shipped *in* a package, unless the covering of certain portions of it make it a 'package' within the meaning of the Act.") I would normally expect a package at least to completely enclose the goods in question. Here, the tuners were completely enclosed in cartons—each carton was obviously a package. Strapping six cartons together on a platform with a board on top "to prevent

other cargo and the [four metal] straps from cutting into the top two cartons"[1] did not make a package out of the six cartons, since the pallet was not also enclosed on the sides. I realize that problems will remain on how to deal with other large units in the future, e.g., "fishyback" trailers. I suggest that we decide such cases when they arise, emphasizing now only the minimum requirements of a package.

None of the reasons the majority has given is adequate to support the unfair result here. First, the characterization of the transaction by the parties to a contract of adhesion, see Caterpillar Overseas, S.A. v. S.S. Expeditor, 318 F. 2d 720, 722 (2d Cir.), cert. denied, American Export Lines, Inc. v. Caterpillar Overseas, S.A., 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 272 (1963), should not be controlling. Cf. section 3(8) of COGSA, 46 U.S.C. § 1303(8); G. Gilmore & C. Black, Admiralty 167 n. 156 (1957). Moreover, in this case, whether the parties did consider the pallets to be the statutory packages is ambiguous at best; e.g., appellee's own agent referred to "the loss of 42 cartons."

Second, the majority opinion points out that the shipper, apparently for reasons of convenience and safety, and not the carrier chose to make up the cartons into a pallet. This would seem irrelevant. The opinion concedes that carriers also benefit from the use of pallets; indeed, in footnote 4, it refers to other "exciting possibilities" of large shipping units, presumably desirable to carriers as well as to shippers. Attaching no significance to which party loaded the cargo on board the vessel, the majority considers crucial the number of units received from the shipper, which it equates with the number of packages, arguing that "the number of inner cartons is not apt to be mentioned in * * * the shipping documents * * *." This, of course, assumes the conclusions that a carton is not a unit and—by calling these plainly visible cartons "inner cartons"—that the cartons were not packages. See also 49 U.S.C. § 100, made a part of COGSA by 46 U.S.C. § 1303(4), discussed in American Trading Co. v. The Harry Culbreath, 187 F.2d 310 (2d Cir. 1951).

Third, the majority implies that this shipper could have obtained full coverage by declaring the nature and value of goods and, if necessary, paying a higher tariff. But if each carton was a package, there would be no occasion for a special declaration at a higher charge, since each carton was worth less than $500. Thus, finding significance in failure to declare merely begs the question of how to construe the word "package."

Fourth, the majority concedes that the $500 package limitation may have become inadequate and its application inequitable, but asserts that revision must come from Congress, not the courts. Inadequate it has become; technological advancement and decline in the purchasing value of the dollar have combined to reduce the meaning of the $500 minimum liability limitation Congress gave to cargo interests. But I do not understand why we should add to the inequity. The call for congressional revision may be sound, but in the meantime we should construe the existing statutory term as applied to the facts before us in consonance with its legislative purpose. That judicial function we ought not abdicate.

Finally, the majority's result is justified as giving "package" a more predictable meaning. I am not sure what the "certain" definition of package is that the majority relies upon, but I suggest that, in any event, certainty at the expense of legislative policy and equity is undesirable and often turns out to be ephemeral.

I would reverse.

---

1. Stipulation, ¶5.