**SHINKI BOEKI CO., LTD., Plaintiff,**

v.

**SS PIONEER MOON, her engines, boilers, etc., and United States Lines, Inc., Defendants.**

No. 70 Civ. 329.

United States District Court,
S. D. New York.

May 13, 1974.

Bigham, Englar, Jones & Houston, New York City, for plaintiff.

Kirlin, Campbell & Keating, New York City, for defendants.

### MEMORANDUM

FRANKEL, District Judge.

The court is enwrapped once again in the seemingly endless fascinations brought to us by contending insurers at war over "what constitutes a 'package' within § 4(5) of COGSA, 46 U.S.C. § 1304(5)," a course of infinitely varying studies of which it is confidently known this case "will hardly be the last." Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800, 814 (2d Cir. 1971). The challenge is not diminished by our awareness that "[t]he problem demands a solution better than the courts can afford," id., and that it could be avoided in substantially every case by the shipper's decision to state and pay for the protection he desires.

The case arises from a shipment of 24 "lift-on lift-off tanks" of liquid latex to plaintiff in Japan from Firestone International Company, acting as plaintiff's agent for all purposes relevant here. The tanks were ordered by Firestone from defendant United States Lines, Inc.,* filled by Firestone with the liquid latex, and delivered to the ship Pioneer Moon for storage in its hatches. Each tank was 7'1" long, 7'9" wide, 6'4" high, and had a capacity of 2,000 gallons. The tanks belonged to defendant.

Liquid latex may be shipped "in bulk" by being pumped into a ship's built-in deep tanks (a kind of facility existing

---

*This defendant is the only one before us and is hereinafter referred to merely as the singular "defendant." The ship Pioneer Moon, named in the complaint, has not been served or otherwise brought within the court's jurisdiction.

on the Pioneer Moon as well as other vessels), in drums (which all seem to agree would be "packages" for present purposes), or in tanks like those used in this case.

Upon the form bill of lading supplied by defendant, the shipper listed numbers totaling 24 under the column headed "No. of Pkgs.," wrote under "description" that they were "lift on lift off tanks synthetic latex," and added that they were "said to weigh 359,170" pounds. Freight was charged on this weight at $54 per long ton, for a total of $8,658.56. The long-form bill of lading, incorporated in the contract of carriage, said *inter alia:*

> "It is agreed and understood that the meaning of the word 'package' includes containers, vans, trailers, palletized units, animals and all pieces, articles or things of any description whatsoever except goods shipped in bulk."

Upon arrival in Japan, 11 of the tanks were found to be severely damaged and their contents totally lost. Plaintiff proceeded to assert claims for the loss against defendant. The loss was repeatedly described by plaintiff in terms of "11 tanks" damaged with resulting leakage of the latex.

Following rejection of its claim, plaintiff brought the present suit on January 27, 1970. The case floated gently over the years at a rate suited to its great subtlety and slight urgency. Finally, at a brief hearing on April 17, 1974, the facts were wholly stipulated and defendant conceded liability for the loss. This left for decision the measure of damages. And this, as has been stated, turns on whether the tanks were "packages," to be valued at a maximum of $500 each, or whether, if that characterization is not the correct one, the plaintiff is entitled to recover at the rate of up to $500 "per customary freight unit," 46 U.S.C. § 1304(5). It is stipulated that recovery on the package basis ($500 × 11) will be $5,500, and, on the freight unit basis, $27,733.73.

Counsel have covered exhaustively the learning on the issue thus presented. Without recounting again these detailed expositions, the court concludes that the tanks should be treated as "packages." No single case or single factor appears to control. The court's conclusion is rested in part upon the parties' own descriptions and treatment of the containers. It seems sound in fact and in legal conception to say these movable receptacles, requested by Firestone, were not "functionally a part of the ship," *Leather's Best, supra,* 451 F.2d at 815, even though they were defendant's property. The alternative of shipment "in bulk," whether or not it was specifically open at the moment in question, was and is another known and used mode of shipment. The "functional economics test" of Royal Typewriter Co. v. M/V Kulmerland, 483 F.2d 645, 648–49 (2d Cir. 1973), if not mechanically applicable, seems to support the result herein.

It follows that the judgment for plaintiff will be in the sum of $5,500.

Plaintiff seeks, and defendant resists, an award of interest from January 14, 1969, both agreeing that the matter is discretionary. Interest will be ordered. Defendant withheld until the date of "trial" a concession of liability. Had plaintiff's right to recover been acknowledged at any time, it would have been plain that defendant owed at least the $5,500 now held payable. There is no reason to sanction defendant's free use of the money during the excessive time of the suit's pendency.

The Clerk of the Court will enter judgment for plaintiff in the amount of $5,500, plus interest from January 14, 1969, and costs to be taxed.

It is so ordered.