TOYOMENKA, INC., Plaintiff,

v.

S. S. TOSAHARU MARU, her engines, boilers, etc.

v.

YAMASHITA–SHINNIHON STEAMSHIP CO., LTD., d/b/a Y. S. Line, Defendant and Third-Party Plaintiff,

v.

INTERNATIONAL TERMINAL OPERATING CO., INC., and McRoberts Protective Agency, Inc., Third-Party Defendants.

MARUBENI–IIDA (AMERICA), INC., and Murilspun Ltd., Plaintiffs,

v.

S. S. TOSAHARU MARU, her engines, boilers, etc.,

v.

YAMASHITA–SHINNIHON KISEN K.K. et al., Defendants.

YAMASHITA–SHINNIHON STEAMSHIP CO., LTD., Third-Party Plaintiff,

v.

INTERNATIONAL TERMINAL OPERATING CO., INC., and McRoberts Protective Agency, Inc., Third-Party Defendants.

Nos. 71 Civ. 656, 71 Civ. 1351.

United States District Court, S. D. New York.

Aug. 7, 1974.

Vincent, Berg & Russo, New York City, for plaintiff Toyomenka, Inc., by Stephen A. Frank, New York City, of counsel.

Hill, Rivkins, Warburton, New York City, for plaintiffs Marubeni-Iida (America), Inc. and Murilspun Ltd., by Leo P. Cappelletti, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for Yamashita-Shinnihon, Ltd., defendant and third-party plaintiff, by Harold V. Highan, Richard H. Sommer, New York City, of counsel.

Hill, Betts & Nash, New York City, for third party defendant International Terminal Operating Co., Inc., by Michael J. Ryan, New York City, of counsel.

J. Robert Morris, New York City, for third party defendant McRoberts Protective Agency, Inc., by Henry E. Gorayeb, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

These two consolidated actions were tried to the Court sitting in admiralty, as both involve the loss of certain goods shipped on the S.S. Tosahura Maru which arrived from Japan at Pier 6, Brooklyn, on or about July 27, 1970. Plaintiff Toyomenka, Inc. (hereinafter "Toyomenka") asserts a claim for the non-delivery of 12 cartons of woolen piece goods shipped under bill of lading YN–133, and 16 cartons of woolen piece goods shipped under bill of lading YN–134. Plaintiffs Marubeni-Iida (America), Inc. and Murlispun Ltd. (hereinafter collectively "Marubeni") claim non-delivery of 15 bales of woolen piece goods shipped under bill of lading KN–99.

Yamashita-Shinnihon Steamship Co., Ltd. (hereinafter "Y.S. Line") is the owner of the "Tosahura Maru" and contracted with the International Terminal Operating Co., Inc. (hereinafter "ITO") for the latter to discharge, take care, control, store, protect and deliver the goods consigned to New York on the Tosahura Maru, including the cartons and bales at issue in this action. ITO, in turn, contracted with McRoberts Protective Agency, Inc. (hereinafter "McRoberts") to provide guards and protective service at Pier 6.

It is undisputed that the bills of lading under which the cartons and bales at issue were shipped are subject to the Carriage of Goods by Sea Act (46 U.S.C.

§ 1300 et seq.) and its liability limitations, not only by their terms but also by operation of law. It is also agreed that each of the cartons or bales constitutes a package within the meaning of the bills of lading and the Carriage of Goods by Sea Act.

In the pretrial order the plaintiffs amended their complaints to allege a direct liability to them because of the negligence of ITO and McRoberts. Y.S. Lines also asserts a claim for indemnity, including attorney's fees and disbursements against ITO and McRoberts. In turn, ITO asserts a similar claim for indemnity against McRoberts. McRoberts has cross-claimed against ITO.

ITO and McRoberts disclaim any liability and assert that even if liable they are entitled to the package limitation of COGSA. They further defend against the direct claim of the plaintiffs on the basis that it is barred by the Statute of Limitations and that this Court lacks jurisdiction over the subject matter of the suit.

■ All of these legal gyrations arise from a very simple set of facts. Plaintiffs were the owners of certain bales and cartons of piece goods shipped from Japan to Brooklyn. Forty-two out of the 43 bales and cartons were unloaded from the Tosahura Maru, but 1 carton under bill of lading KN–99 consigned to Marubeni was not unloaded. Y.S. Lines admits liability for the loss of this carton but urges that the COGSA $500 limitation be applied to the loss. I agree that the limitation should so apply.

The other 42 cartons and bales were placed by ITO in the bale area of the shed on Pier 6. The bale area was protected by a guard employee of McRoberts whose responsibility included making sure that the packages were taken out of the area only upon presentation of an order. McRoberts also supplied a guard on each of the two loading platforms where the trucks came to pick up merchandise on Pier 6. Two other McRoberts guards were also on the dock during working hours, one patrolling and the other stationed in the crib area. There was also a McRoberts guard at the gate outside the dock.

During non-working hours there was a McRoberts guard at the gate and another inside the locked pier.

On August 1, 1970, when the cargo consigned to New York was completely unloaded, the goods in question were discovered to be missing. The how and the wherefore of their disappearance remains a total mystery. It is clear, however, that on the days between the time that the Tosahura Maru arrived and the goods were discovered missing there were at least 40 longshoremen working on the dock and various and sundry truckmen coming to pick up goods at the loading platform on the dock.

The first question (and perhaps the most important one from an economic point of view) is whether ITO and McRoberts are entitled to the COGSA limitation of liability as expanded by the bills of lading. Each of the three bills of lading contains the following clause:

"Without prejudice to any other provision hereof it is hereby expressly agreed that all servants, agents and independent contractors including in particular, but not by way of limitation any stevedores used or employed by the Carrier for the purpose of or in connection with the performance of any of the Carriers obligations under the Bill of Lading shall in consideration of their agreement to be so used or employed have the benefit of all rights defences, exceptions from or limitations of liability or immunities of whatsoever nature referred to or incorporated herein applicable to the carrier or to which the Carrier is entitled hereunder so that in no circumstances shall any such servant, agent or independent contractor be under any liability greater than that of the carrier hereunder. It is hereby further expressly agreed that for the purpose of the foregoing provision the Carrier is or shall be deemed to be acting as agent or trustee on behalf and for the benefit of all persons who are or may be its servants, agents or

independent contractors from time to time for the purpose of or in connection with the performance of any of Carriers obligations under this Bill of Lading, and that all such persons shall to this extent be or be deemed to be parties to the contract contained in or evidenced by this Bill of Lading."

 It is settled law that parties may expand the coverage of the Carriage of Goods by Sea Act by the terms of a bill of lading. Secrest Machine Corp. v. S.S. Tiber, 450 F.2d 285 (5th Cir. 1971), and that a stevedore may assert the COGSA limitation where as here its liability is expressly limited by the bill of lading. The only interesting question is whether McRoberts, as an independent contractor of the stevedore, is also protected by the limitation. Clearly the employees and agents of the stevedore have such protection. See Carle & Montanari, Inc. v. American Export Inbrandtsen Lines, Inc., 275 F.Supp. 76 (S.D.N.Y.) aff'd, 386 F.2d 839 (2d Cir. 1967), cert denied, 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1969). And, by analogy, I would hold that McRoberts in this particular case should also have the benefit of the limitation. See Sperry Rand Corporation v. Norddeutscher Lloyd, 1973 A.M.C. 1392 (S.D.N.Y. 1973).

 In any event, the primary responsibility for the loss of the goods at issue lies with the carrier, Y.S. Lines. Its bill of lading provides that the Hague Rules (COGSA) would be in effect:

"before the goods are loaded on and after they are discharged from the vessel and throughout the entire time the goods are in the custody of the Carrier."

The maritime contract continued even after the goods were unloaded on the pier.

"As has been frequently and recently held, the contract continued to govern the relationship between the plaintiff and Lloyd [the shipper] after discharge but before delivery of [the goods] to plaintiff or its agent." Royal Typewriter Co. v. M.V. Kulmer-

land, 346 F.Supp. 1019, 1023 (S.D.N.Y. 1972), aff'd 483 F.2d 645 (2d Cir. 1973).

 The plaintiffs are therefore entitled to damages from the Tosahura Maru and Y.S. Lines but such damages are limited to $500 per package. A more substantial question is presented by the claimover by Y.S. Lines against ITO and McRoberts. It is clear that except for the 1 carton not unloaded from the Tosahura Maru, the other 42 cartons were lost by the negligence of ITO or McRoberts. Each owed a duty of workmanlike performance of its contract to Y.S. Lines, Inc., although McRoberts' duty might be said to have been derivative in nature. The duty of workmanlike performance included the duty of reasonable care. Sperry Rand v. Norddeutscher Lloyd, *supra*. What constituted reasonable care under the circumstances is a question of fact which the precedents are of little help in determining. Here ITO had McRoberts guards at the most vulnerable places on the pier: the crib area, the bale area, the loading platforms and the gate; and a McRoberts guard was constantly on roving patrol during working hours. In non-working hours ITO had a McRoberts guard at the gate and one locked inside the shed on the pier. The ITO pier superintendent did not even have a key to the pier. It is difficult to imagine how much more ITO could have done to exercise reasonable care.

 This is not a case such as Sperry Rand v. Norddeutscher Lloyd, *supra,* or Royal Typewriter Co. v. M.V. Kulmerland, *supra,* where it was clear that the stevedore and terminal operator did not employ sufficient guards. Here the number of guards was sufficient; it was the guarding that was deficient. It may well be that a barge or lighter tied up to the pier one night and absconded with the goods in question such as McRoberts invites this Court to speculate. But this speculation is proof of nothing. Even in such an eventuality the McRoberts guard inside the pier shed should have noticed the 42 bales and cartons being taken from the pier.

Accordingly, I find that the claimover by Y.S. Lines against McRoberts is valid and the claimover against ITO must be dismissed.

But the claimover also includes a claim for attorneys fees and disbursements. In the absence of a specific statutory provision, such an award lies within the discretion of the Court. See Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed 1184 (1939). Here the Y.S. Lines failed to promptly pay or tender to the plaintiffs that which was owed. Even the loss of the one carton which was admitted at trial was denied. I see no reason therefore to award attorneys fees and disbursements and that part of the demand is denied.

The plaintiff and the third party plaintiff having been accorded all that is due to them, I find it unnecessary to discuss the other claims of the various parties.

Settle judgments on notice in accordance with this opinion.