SHINKO BOEKI CO., LTD., Plaintiff-Appellant,

v.

S.S. "PIONEER MOON", her engines, boilers, etc., and United States Lines, Inc., Defendants-Appellees.

No. 294, Docket 74–1853.

United States Court of Appeals, Second Circuit.

September Term, 1974.

Argued Nov. 15, 1974.

Decided Nov. 29, 1974.

Vincent L. Leibell, Jr., New York City, (Bigham, Englar, Jones & Houston, New York City, of counsel), for plaintiff-appellant.

Richard H. Sommer, New York City, (J. Scot Provan, and Kirlin, Campbell & Keating, New York City, of counsel), for defendant-appellee.

Before FRIENDLY, FEINBERG and GURFEIN, Circuit Judges.

FRIENDLY, Circuit Judge:

We are here required, for the first time in this circuit, to consider the application to the shipment of liquids of § 4(5) of the Carriage of Goods by Sea Act, 46 U.S.C. § 1304(5), which limits the amount of damages, in cases where the carrier is liable, to "$500 per package . . . , or in case of goods not shipped in packages, per customary freight unit," except when a higher value is declared and inserted in the bill of lading.

Plaintiff Shinko Boeki Co., Ltd., a Japanese company, ordered a large quantity of liquid latex from Firestone International Company. Firestone, acting as plaintiff's agent, arranged for the latex to be transported on the Pioneer Moon, a ship of the defendant United States Lines, Inc., sailing from Baltimore, Md., early in December, 1968. The latex was to be carried in thirty-four lift-on, lift-off tanks. Each tank was 7'1" long, 7'9" wide and 6'4" high, was capable of carrying 2,000 gallons and weighed about seven tons when loaded. Apparently—although the record is not entirely clear on this—the tanks were filled by Firestone at the United States Lines' facilities in Baltimore, the latex being pumped into the tanks while the latter were on the deck of the vessel.[1] In any event the bill of lading with respect to twenty-four tanks, including the eleven here at issue, recited "free in and out pumping for account of owner of cargo." Under the heading "No. of pkges," the bill of lading listed a total of twenty-four, this being the number of the tanks, which were "said to weigh" 359,170 pounds. This was the weight of the liquid latex, not including that of the tanks. Also shown on the face of the bill of lading was a computation of the freight charges on the basis of $54 per long ton. Paragraph 24 of the long

form bill of lading provided in part that:

> It is agreed and understood that the meaning of the word 'package' includes containers, vans, trailers, palletized units, animals and all pieces, articles or things of any description whatsoever except goods shipped in bulk.

On arrival in Japan, eleven of the tanks were found to be either completely empty or their contents contaminated to an extent that the latex was unfit for its intended use. In making its claim, plaintiff repeatedly described its loss in terms of "11 tanks." The claim having been rejected, plaintiff began this action against the carrier in the District Court for the Southern District of New York in January, 1970. When in the fullness of time the parties—more accurately their insurers—brought the case on for hearing, defendant admitted liability. The sole issue was the amount of recoverable damages, specifically whether the tanks containing the latex constituted "packages" for the purposes of COGSA's § 4(5) damage limitation. If they did, then recovery would be $5,500, calculated on the basis of $500 per tank. If they did not, then damages were stipulated as $27,733.73, the pro-rata insured value of the lost latex and damage survey costs; this amount was within § 4(5)'s alternate damage recovery limitation of $500 per "customary freight unit", in this case about $37,000, calculated on the basis of $500 per long ton. The district court concluded that the tanks were "packages" and awarded judgment for the lesser amount. From this the plaintiff has appealed. We reverse.

▪ We begin, as we did in Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 815 (2 Cir. 1971), with "the belief that the purpose of § 4(5) of

---

1. This was the deposition testimony of John P. Grimes, who had been Chief Clerk in Firestone's Traffic Department at the time of the shipment, which was received in evidence. A stipulation of facts also indicates that the tanks were loaded with the latex at Baltimore. Seemingly this overcomes the vague statement in the pre-trial order that Firestone "delivered" the tanks.

COGSA was to set a reasonable figure below which the carrier should not be permitted to limit his liability . . . ." See the legislative history cited by Judge Weinfeld in Jones v. The Flying Clipper, 116 F.Supp. 386, 388–89 notes 10 and 11 (S.D.N.Y.1953); Gilmore & Black, The Law of Admiralty, 125–26 (1957); and Simon, The Law of Shipping Containers, 5 J.Mar.Law & Comm. 507, 518–19 (1974). Although large size and heavy weight, with probable consequent high value, do not mandate the conclusion that a particular shipment is not a "package" in a case where a shipper has done something to prepare the goods for carriage, see Aluminios Pozuelo Ltd. v. S.S. Navigator, 407 F.2d 152 (2 Cir. 1968), they at least suggest the need for careful scrutiny of the entire transaction to ascertain whether the complaining shipper in fact did any "packaging". As Judge Moore explained in *Aluminios, Id.* at 155, the term "package" implies that "some packaging preparation for transportation has been made which facilitates handling . . . ." *See also* Nichimen Co., Inc. v. M. V. Farland, 462 F.2d 319, 334–35 (2 Cir. 1972).

The evidence here was that there were three possible methods for the ocean transport of liquid latex. One would have been shipment in metal drums each carrying 55 gallons; clearly these would have been "packages" and maximum liability for the equivalent of the eleven tanks would have been $200,000. Another method would have been to pump the latex into a ship's deep tanks; in that case there clearly would have been no packages and the shipper could have recovered the $500 per shipping unit, The Bill, 55 F.Supp. 780, 783 (D.Md. 1944) (Chestnut, J.), quoted with approval in Waterman S.S. Corp. v. United States S. R. & M. Co., 155 F.2d 687, 693 (5 Cir.), cert. denied, 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656 (1946). However, shipment to the Far East in deep tanks was apparently unavailable at the time of the instant shipment. The third method was that actually employed.

Shipment in the 2,000 gallon tanks furnished by the ship is more closely analogous to shipment in its deep tanks than to transportation in the shipper's drums. The tanks were the carrier's property, used on voyage after voyage, not included in computing the freight charges, and apparently filled while under the supervision of a representative of the carrier. In practical effect they were a smaller and movable version of the deep tanks. They were "functionally part of the ship" every bit as much as the metal container holding ninety-nine bales of leather on the *Mormaclynx, supra,* 451 F.2d at 851. If, as we hold, the tanks furnished by the carrier were not packages, the quoted provision from the bill of lading could not make them so, 46 U.S.C. § 1303(8); in any case, we believe the liquid latex was within the exception for "goods shipped in bulk."

Our decision is not inconsistent with Royal Typewriter Co. v. M/V Kulmerland, 483 F.2d 645 (2 Cir. 1973), on which the defendant relies. The bill of lading in that case read only "1 container said to contain Machinery", 483 F.2d at 646, and gave the carrier no notice of the number of cartons contained therein for which the shipper sought to collect $500 each. Here the weight was clearly stated. Moreover, the "functional economics test" there announced affords little help with respect to the bulk shipment of a liquid.

As is usual where a question arises whether a particular container is a "package" for purposes of § 4(5), there is a clamor for predictability. *See e. g.,* DeOrchis, The Container and the Package Limitation—The Search for Predictability, 5 J.Mar.L. & Comm. 251 (1974). That, however, could be obtained as well by generally disregarding the final container, a course favored by shipper interests, see the article by Simon, *supra,* 5 J.Mar.L. & Comm. 507, 520–32, criticizing the *Royal Typewriter* decision, as by considering the container always to be the package at

least when it contains goods of a single shipper, as the carriers advocate, *see DeOrchis, supra.* Moreover, as said by Judge Feinberg, dissenting in Standard Electrica, S.A. v. Hamburg Sudamerikanische Dampfschifffahrts-Gesellschaft, 375 F.2d 943, 948 (2 Cir.) cert. denied, 389 U.S. 831, 88 S.Ct. 97 19 L.Ed.2d 89 (1967), "certainty at the expense of legislative policy and equity is undesirable and often turns out to be ephemeral." In line with that thought, we have endeavored, doubtless without complete success, to apply the statute in accord with the probable expectations of the parties. In any event our decision here should provide a fair degree of predictability within this circuit with respect to liability for the ocean transport of bulk liquids until the issue is resolved by higher authority or by treaty, *see* Royal Typewriter Co. v. M/V Kulmerland, *supra,* 483 F.2d at 648 n. 6.

The judgment is reversed, with instructions to enter a judgment for $27,-733.73, with interest from January 14, 1969 and costs.