ALLIED INTERNATIONAL AMERICAN
EAGLE TRADING CORP., Plaintiff,

v.

S.S. "YANG MING", her engines,
boilers, etc.,

v.

YANGMING MARINE TRANSPORT
CORPORATION, Defendant.

No. 79 Civ. 5061 (KTD).

United States District Court,
S. D. New York.

June 9, 1981.

Dwyer, Peltz & Walker, New York City,
for plaintiff; Alexander Peltz, New York
City, of counsel.

Cichanowicz & Callan, New York City,
for defendant Yang Ming Marine Corp.;
Paul M. Keane, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District
Judge:

This is an admiralty action in which the
plaintiff, Allied International American Ea-
gle Trading Corporation [hereinafter "Al-
lied"], a New York corporation, seeks dam-
ages for the non-delivery of certain cargo.
Defendant, Yangming Marine Transport
Corporation [hereinafter "Yangming"], a
carrier, is a Taiwan corporation and owner
and operator of defendant S.S. "YANG
MING." Defendants concede liability for
non-delivery of the cargo and the sole ques-
tion before this court is the amount of
damages owing to the plaintiff. A determi-
nation of this amount turns on the meaning
of the word "package" for purposes of ap-
plying the package liability, limitation im-
posed by § 4(5) of the Carriage of Goods by
Sea Act of 1936 [hereinafter "COGSA"], 46
U.S.C. § 1304(5).

A one day non-jury trial was held before me on July 18, 1980. At trial, the parties introduced into evidence various documents connected with the missing cargo and presented witnesses. The following shall constitute this court's findings of fact and conclusions of law.

On June 3, 1977, at Yokohama, Japan, defendant carrier received from shipper, Associated Lumber & Trading Company Ltd., (not a party herein), cargo consisting of screws, bolts, nuts, studs and washers purchased by the plaintiff. The cargo was to be shipped to plaintiff in New York on board the S.S. "YANG MING." According to defendant's bill of lading, dated June 3, 1977, the cargo was packed by the shipper primarily on pallets. These pallets consisted of wooden platforms upon which the drums, cartons and cases were placed, and was fitted across the top with a second wooden platform. The units of drums, cartons and cases were secured to the pallets by metal straps. Several of the units were not placed on pallets.

The bill of lading describe in pertinent part the shipment as follows:

| No. of Containers or P'Kgs | Description of Packages and Goods |
| --- | --- |
| 1 Pallet (6 Cases) | Screws, Bolts, Nuts, Studs |
| 1 Pallet (9 Cartons) | |
| 1 Pallet (16 Cartons) | |
| 1 Pallet (14 Cartons) | |
| 4 Pallets (40 Drums) | |
| 2 Cases | |
| 1 Pallet (9 Drums) | |
| 1 Pallet (9 Drums) | |
| 8 Pallets (72 Drums) | |
| 8 Drums | |
| 2 Drums | |
| 30 Packages | |

On July 1, 1977, the S.S. "YANG MING" arrived in New York and delivered all but 19 drums and cartons of the shipment. These drums and cartons were packed on two pallets—nine cartons on one, ten drums on the other. At trial, the parties agreed that the actual value of the undelivered cargo was in excess of $8,500. Plaintiff argues that defendant is subject to liability for the non-delivery of nineteen "packages", or $8,500. Defendant, however, urges the court to find it liable for only $1,000 representing the application of the COGSA package limitation to each of the two undelivered pallets. Section 4(5) of COGSA[1] sets a limitation on a carrier's liability for loss or damage to cargo at $500 per "package" or "per customary freight unit" for cargo not shipped in packages. Parties may agree among themselves to a greater figure by declaring in the bill of lading as to "the nature and value of such goods."

Plaintiff contends that although defendant characterized the cargo as totalling "30 packages" on its bill of lading, defendant clearly received notice and had full knowledge of the number of drums, cartons and cases on each pallet. Furthermore, not only were the pallets strapped in such a way as to make each unit visible to the carrier, but also the defendant in its bill of lading described the loose drums and cartons, as well as the drums, cartons and cases packed on pallets, as "packages."

Plaintiff relies on *Allied International American Eagle Trading Corp. v. S.S. "EXPORT BAY"*, 468 F.Supp. 1233 (S.D.N.Y. 1979), a case involving the same plaintiff, same type of cargo and same issue. *Export Bay* held that individual kegs of steel fasteners that were palletized and non-palletized bundles of kegs were all "packages" for the purpose of applying the package limitation imposed by COGSA. Also, the

1. Section 4(5) provides in part:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount *exceeding $500* per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading ....

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided*, that such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

plaintiff argues that they should not be penalized for utilizing a form of packaging which benefits the carrier only. The parties agree that cargo is palletized to facilitate handling during loading, discharging and storage. In fact, the defendant offered a reduced freight rate for cargo shipped on pallets.

The Second Circuit in *Mitsui & Co., Ltd. v. American Export Lines, Inc.*, 636 F.2d 807 (2d Cir. 1981) recently had an opportunity in two companion cases to once again explore the meaning of the word "package" in section 4(5) of COGSA in the context of large metal carrier-furnished containers. The court held that such containers were not "packages" for purposes of computing damages under § 4(5) of COGSA. In revising the "functional economics test"[2] of *Royal Typewriter Co. v. M/V Kulmerland*, 483 F.2d 645 (2d Cir. 1973), the court found in the first of two companion cases in *Mitsui* that where the shipper had wrapped rolls of floor into "packages" as defined by the dictionary and had done everything possible in the bills of lading to put the carrier on notice as to the contents of the loaded containers, the individual rolls were "packages" within the meaning of COGSA. In the second companion case, where the shipper had done nothing to hold stacks of ingots together, the court concluded that "it does not at all follow . . . that the containers become the packages." 636 F.2d at 822. Rather, it concluded, the $500 limit applied "per customary freight unit", as alternatively provided for in § 4(5).

Examining the policies behind COGSA and § 4(5), the court reasoned that Congress effectuated two dominant objectives in enacting the statute:

> . . . to ensure uniformity in the basic rights and responsibilities arising out of bills of lading and—most important for our present inquiry—to fix 'an irreducible minimum of immunity of the carrier

from liability' . . . . This latter objective underlies both the carrier's duties to furnish a seaworthy ship and to care properly for the cargo . . . and the minimum level of liability established by § 4(5) . . . . To fulfill Congress' ultimate objective, both aspects of the statute must be given effect; the carrier's duties would be meaningless if their violation entailed no significant liability. In interpreting § 4(5), courts must therefore take a critical look at any proposed construction of that section that would reduce a carrier's liability below reasonable limits.

636 F.2d at 815.

The Second Circuit left open the question of what was the proper categorization of shipper-provided pallets as distinguished from carrier-provided containers. Defendant here relies on another Second Circuit case, *Standard Electrica v. Hamburg Sudamerikanische*, 375 F.2d 943 (2d Cir. 1967), where the court found that each pallet, rather than each of the six corrugated fibreboard cartons placed on it, was a "package." A reading of *Standard Electrica* shows, however, that the court relied in part on the fact that the shipping documents gave the carrier no notice of the contents of the pallets.[3] "The dock receipt, the bill of lading, and libellant's claim letter all indicated that the parties regarded each pallet as a package." *Id.* at 946. Disclosure to the carrier was also an important concern of the court in *Mitsui*. There, in rejecting the functional economics test, the court cited the 1968 Brussels Protocol:

> Where a container, pallet or similar "article of transport" is used to consolidate goods, the number of packages or units enumerated in the bill of lading as packed in such articles of transport shall be deemed to be the number of packages or units; if, on the other hand, the bill of lading does not show how many separate

---

2. The functional economics test in essence stated that where the shipper's own packing units are functional, a presumption is created that the functional unit is a 'package.' *See Mitsui, supra*, 636 F.2d at 817–18.

3. Judge Feinberg (now Chief Judge), dissenting in *Standard Electrica*, argued that in a close case section 4(5) should be construed consistently with the policy of the statute—to protect cargo interests from carriers' limitations of liability. 375 F.2d at 947.

packages there are, then each 'article of transport' shall be deemed a package or unit.

636 F.2d at 821.

■ As a result of *Mitsui*, it appears that where the contents of a shipment, packed on pallets provided by the shipper, were fully disclosed in the bill of lading, the $500 COGSA limitation would apply to the identifiable and identified individual units, not the pallets. This conclusion is consistent with the overall Congressional policy of insuring that the carrier is subject to a reasonable, minimum level of liability for loss or damage sufficient to induce it to take precautions to protect the cargo.

■ In the case herein, a careful examination of the documents presented at trial leads me to conclude that the drums and cartons packed on each pallet, and identified in the bill of lading, should be treated as the "package" for the purpose of applying the COGSA limitation. Defendant itself prepared the bill of lading which clearly lists the contents of each pallet. Under the circumstances, plaintiff adequately gave notice to the defendant of the number of packages on each pallet. *See Export Bay, supra.* It is true that the bill of lading treats the non-palletized drums as packages but does not treat the palletized drums as packages. This ambiguity, however, must be construed against the carrier and thus interpreted to mean that all drums were packages. *See Mitsui, supra,* 636 F.2d at 822–23.

As a result, the individual drums and cartons, not the pallets, are the "package" for purposes of determining damages incurred by plaintiff. Accordingly, defendant is liable for $8,500, the value of the 19 packages.