... hardly barred by the limitations of ... could ... to make it even more ... the Time and expenses of ... were specifically excluded.

... is the War Awards Act of any avail ... The only reference to costs is ... absence of attorneys' fees as costs ... private party. Plaintiffs' ... fees and expenses, therefore, ... the boundaries of ...

... LABORATORIES ... French Laboratories ... Blaine, & Lac Corp., Plaintiff.

v.

... SPLENDOR, her engines, boilers, etc., and Hellenic ... Defendants.

No. 71 Civ. 4603.

United States District Court, E.D. New York.

June 16, 1977.

Standard, Weisberg, Heckelman, Shaw &amp; Winslow, New York City, represented by Lewis Herman, New York City, offered...

1. We are aware of the fact...
   with the...

under § 4(5) of the Carriage of Goods by Sea Act (COGSA), entitled to have damages limited to that amount on the theory that it had received only 9 "packages" from the shipper?

We shall discuss these questions in inverse order.

## I.

■ With respect to the number of "packages" involved for purposes of COGSA limitations, both parties seem to agree that if the case is governed by *Standard Electrica, S.A. v. Hamburg Sudamerikanische* (2d Cir. 1967) 375 F.2d 943, *cert. denied* 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89, the carrier must prevail in its contention that we are dealing with 9 packages. The shipper however contends that *Standard Electrica* has been qualified by *Royal Typewriter Co. v. M.V. Kulmerland* (2d Cir. 1973) 483 F.2d 645, and that the logic of that opinion should lead to a finding that 163 packages are involved.

We conclude, first, that the *Royal Typewriter* opinion was not intended to qualify *Standard Electrica* with respect to the subject matter of the earlier case (palletized shipment) but was intended to deal only with the quite different problems presented by containerization; and, secondly, that even if the *Royal Typewriter* reasoning were to be applied the result would be the same, and we would still be left with a shipment of 9 "packages".

The following factors are established by the evidence before us: the decision to palletize was made by the shipper, the carrier having no part therein; such decision was made by the shipper exclusively in its own self-interest, with no regard for the interest of the carrier; the vast majority (and probably all) of the shipper's international shipments by sea were palletized; all documents emanating from the shipper referred in one way or other to "9" pieces, although the fact that such 9 pieces contained a total of 163 cartons was also mentioned; there being no affirmative evidence that the shipper had ever shipped a carton by sea, there is no evidence that any of the 163 cartons was suitable for such shipment.

On the basis of the foregoing facts we conclude that, regardless of whether *Standard Electrica* or *Royal Typewriter* is applicable, we are dealing with a shipment of 9 packages, and the carrier's liability is therefore limited to $4,500.

## II.

■ Having determined that carrier's liability is limited to $4,500 it only remains to decide whether the deterioration of the shipper's product between the stipulated dates of June 27, 1974 and January 5, 1975 caused damage in at least that amount. There seems to be no dispute that the $40,000 cargo had become virtually a total loss by October 25, 1975 when it was first available for delivery, but the carrier contends that the shipper had failed to sustain the burden of establishing that any significant amount (at least $4,500 worth) of this deterioration had occurred between the critical dates.

We find that the shipper has in fact sustained that burden through the testimony of its expert witness, Dr. Vincent A. Motsavage. At trial Dr. Motsavage impressed us as knowledgeable, forthright and truthful. Our subsequent review of the transcript of his testimony confirms that impression. Taking due account of his status as an employee of the shipper and hence of his obvious interest in the outcome, we find his testimony to be credible.

Basing his testimony on the fact (which we find to have been established) that the cargo was stored either in the open or in a nonair-conditioned warehouse in weather conditions prevailing in Saudi Arabia, he gave it as his opinion that the cargo would have shown no substantial deterioration before June of 1974 but would have substantially deteriorated and have become unsalable in the following six months. He pointed out that certain items of the cargo would have been exempt from such deterioration. However in light of the $4,500 limitation it

is unnecessary to isolate the value of those items.[2]

Dr. Motsavage's testimony was un-contradicted. The carrier's expert Dr. Nickolai, also an impressive witness, conceded he knew nothing about the shipper's product and that there were no industry standards as to deterioration against which that product could be measured. We therefore find his testimony to be irrelevant.

## CONCLUSION

Based on the evidence and the stipulation of the parties we conclude

a) that the carrier is responsible for any damages suffered by the cargo between June 27, 1974 and January 5, 1975.

b) That deterioration causing damage in excess of $4,500 occurred during that period; but that

c) Pursuant to the provisions of COGSA the carrier's liability is limited to $4,500.

The foregoing shall constitute the court's findings and conclusions pursuant to Rule 52 of the Federal Rules of Civil Procedure. If either party should consider that further findings or conclusions would be helpful to it in prosecuting or resisting an appeal, we shall entertain any proposed findings or conclusions not inconsistent with the foregoing which may be submitted on or before June 27, 1977.

Settle judgment; the judgment shall award plaintiff the amount of $4,500 with interest from June 27, 1974, with the period between January 5 and October 25, 1975 being excluded from the computation of interest.

---

2. The carrier does not seem to contend that they constitute a significant proportion of the total.