562 F.2d 938
 BAKER OIL TOOLS, INC., Plaintiff-Appellee,
v.
DELTA STEAMSHIP LINES, INC., Defendant Third Party Plaintiff-Appellant,
v.
PORT OF HOUSTON AUTHORITY OF HARRIS COUNTY, Texas, Defendant-Appellee,
Harris County Houston Ship Channel Navigation District,
Third Party Defendant-Appellee.
 No. 75-3678.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 10, 1977.
 
 Kenneth D. Kuykendall, Houston, Tex., for Delta S. S. Lines, Inc.
 Thomas A. Brown, William C. Bullard, Houston, Tex., for Baker Oil.
 Jack Allbritton, Houston, Tex., for Port of Houston and third party defendant-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GODBOLD, TJOFLAT and HILL, Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 In the proceedings below, the district court held Delta Steamship Lines, Inc. (Delta) liable as a common law bailee for the loss of oil field equipment received for overseas shipment from Baker Oil Tools, Inc. (Baker), and entered judgment for the full value of the equipment. The district court also decided against Delta on its third party complaint which sought to shift the burden of loss to the Port of Houston Authority (Port).[1]
 
 
 2
 In this appeal, Delta claims error in the trial court's disposition of both the main case and the third party proceedings. As for the main case, Delta contends that Baker's claim should be dismissed for want of subject matter jurisdiction on the theory that a common law bailment action cannot be entertained by a federal court in the exercise of its admiralty jurisdiction.[2] Alternatively, Delta contends that if subject matter jurisdiction is present the trial court erred in not limiting liability to $500 per package in accordance with its contract with Baker for the shipment of the equipment. As regards the third-party proceedings, Delta contends that the trial court should have found the Port ultimately responsible as Delta's bailee, or, if not, liable over to Delta for breaching an independent duty to exercise due care in the maintenance of security measures. We reject each of Delta's contentions and affirm.
 
 
 3
 A brief review of the evidence is necessary to place Delta's contentions in proper perspective. On the day Baker's equipment arrived at the wharf, employees of the Port unloaded the equipment from Baker's trucks and placed it on the berth assigned to the Delta ship designated to carry the cargo. A dock receipt was then signed by a Delta clerk. When a bill of lading failed to issue from Delta (so to indicate that the cargo had been loaded on the ship), inquiry disclosed that the port of call to which the cargo was to be shipped had been cancelled by Delta without notice to Baker. Other shipping arrangements were made but by then the cargo could not be found. The district court found from these essentially undisputed facts that initially Baker and Delta had entered into a contract for the shipment of the goods and that the terms of the contract were those embodied in the bill of lading that Delta was to issue when the goods were loaded aboard ship. Among those terms was a provision limiting Delta's liability for loss to $500 per package as authorized by the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq. (1970) (COGSA).[3] The court went on to find, however, that Delta's unilateral cancellation of the port of call operated to terminate the limitation provision and that Delta continued to maintain custody of the equipment with the full liability exposure of a common law bailee. Since the goods thereafter disappeared while in Delta's custody and Delta was unable to establish a lawful excuse for their disappearance, the court proceeded to impose liability on the bailee for the value of the goods. We can find no error in the district court's analysis of the bailment issue.
 
 
 4
 As regards subject matter jurisdiction, we observe that Congress, in passing the Harter Act, 46 U.S.C. § 190 et seq. (1970), has treated pre-loading bailments as within the ambit of maritime law.[4] When Delta accepted custody of Baker's equipment for the purpose of shipping, it assumed all of the obligations imposed by that Act which include the custodial responsibilities that devolve upon a common law bailee. See Isthmian S. S. Co. v. California Spray Chemical Corp., 300 F.3d 41, 45-46 (9th Cir. 1962); see also David Crystal, Inc. v. Cunard S. S. Co., 339 F.2d 295, 297-98 (2d Cir. 1964). Although the district court did not expressly undertake to find a basis for the exercise of admiralty jurisdiction, it is obviously present in this case.[5]
 
 
 5
 With respect to Delta's third party claim, we find the district court's disposition to be unassailable. The Port's responsibility as temporary custodian, while moving the goods from Baker's trucks to the Delta berth, ended when the Delta clerk accepted delivery of the goods and signed the dock receipt.[6] There is nothing whatever in the record to support Delta's contention that the Port thereafter breached any duty to Delta. The Port at no time undertook to store and care for the equipment, and there is no probative evidence to support Delta's contention that the equipment disappeared as a result of the Port's negligence in failing to maintain routine security measures.
 
 
 6
 AFFIRMED.
 
 
 
 [1]
 The district court's opinion is reported at 387 F.Supp. 617 (S.D.Tex.1974)
 
 
 [2]
 The Constitution extends the judicial power of the federal courts to maritime actions. U.S.Const. art. III, § 2, cl. 1. The district court's subject matter jurisdiction was first questioned by Delta on this appeal in oral argument. It is an issue which may be raised at any stage, whether at trial or on appeal. Fed.R.Civ.P. 12(h)(3)
 
 
 [3]
 COGSA, by its literal language, establishes the duties, responsibilities, and liabilities of the carrier after the goods are loaded on the ship. 46 U.S.C. § 1301(e) (1970). However, by virtue of the Harter Act, 46 U.S.C. § 190 et seq. (1970), which governs the pre-loading phase of the carrier's responsibility to the shipper, the parties may agree to extend COGSA's package limitation provision to cover the time when the goods are in the carrier's possession prior to loading. See Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800, 816 (2d Cir. 1971). At the time of its transaction with Baker, Delta's standard bill of lading contained a provision extending the $500 per package limitation of liability to the time of the acceptance of cargo by Delta. Although the bill of lading was never issued in this case, because the equipment was never loaded onto Delta's ship, the trial court properly found that the Baker-Delta agreement was evidenced by the provisions of the bill of lading. Luckenbach S. S. Co. Inc. v. American Mills Co., 24 F.2d 704 (5th Cir. 1928)
 
 
 [4]
 The first section of the Harter Act provides:
 It shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect. 46 U.S.C. § 190 (1970).
 COGSA does not supersede the Harter Act insofar as it relates
 to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship. 46 U.S.C. § 1311 (1970).
 See also, North American Smelting Co. v. Moller S. S. Co., 204 F.2d 384, 385 n. 2 (3d Cir. 1953) (action to recover for the value of goods lost after the carrier has unloaded them onto the pier is cognizable in admiralty).
 
 
 [5]
 Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800 (2d Cir. 1971), cited by Delta in its jurisdictional attack, is inapposite to the Baker-Delta situation. The bailee of the goods on the dock in Leather's Best was not a carrier and could not have been considered as a party to a maritime contract; therefore, that bailment was not within the admiralty jurisdiction
 
 
 [6]
 The dock receipt was executed as required by the Port's Tariff No. 8, Item No. 49, which provides:
 Steamship company shall receipt daily for cargo tendered by (Port of Houston Authority) in its capacity as exclusive unloader of railroad cars, motor vehicles or other conveyances delivering same to its transit sheds and wharves, and steamship company shall be responsible for such cargo from the time of placement in vessel's berth by Navigation District.
 Delta's argument that this Tariff provision is void as against public policy on the theory that it attempts to exonerate the Port from liability for its own negligence is untenable. The provision does nothing more than specify when a carrier, such as Delta, becomes the bailee.